IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PHILIP WILCOX,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| **CAINE & WEINER COMPANY,** | ) |
| **INC., EQUIFAX INFORMATION** | ) |
| **SERVICES LLC, TRANS UNION** | ) |
| **LLC, and EXPERIAN** | ) |
| **INFORMATION SOLUTIONS, INC.** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Comes now Philip Wilcox, Plaintiff, through counsel, and files his Complaint for Violations of the FCRA showing this Court the following:

1. This Court has jurisdiction over this matter pursuant to the Fair Credit Reporting Act, 15 U.S.C. Section 1681(p). Venue lies in the Northern District of Georgia as Plaintiff's claims arose from acts of Defendants perpetrated therein.

### *PRELIMINARY STATEMENT*

2. Plaintiff brings this action for damages based upon Defendants' violations of the FCRA.

3. Plaintiff is an individual, natural person, and thus is a "consumer" as defined by the FCRA.

Page **1** of **17**

4. Caine & Weiner Company, Inc. ("Caine & Weiner") is a foreign corporation that may be served c/o Greg A. Cohen., 5805 Sepulveda Blvd. FL 4, Sherman Oaks, CA 91411-2532.

5. Equifax Information Services LLC ("Equifax") is a domestic limited liability company with its principal office located at 1550 Peachtree Street N.W., Atlanta, Georgia 30309 and may be served through its registered agent, Lisa Stockard, at that address.

6. Trans Union LLC ("Trans Union") is a foreign limited liability company licensed to do business in the state of Georgia that can be served through its registered agent, c/o Prentice-Hall Corporation System, 40 Technology Parkway South, #300, Norcross, Georgia, 30092.

7. Experian Information Solutions, Inc. ("Experian") is a foreign limited liability company licensed to do business in the state of Georgia that can be served through its registered agent, c/o CT Corporation System, 289 S Culver Street, Lawrenceville, Georgia 30046.

8. Experian, Equifax and Trans Union are consumer reporting agencies (hereinafter "CRAs"), as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

## FACTUAL ALLEGATIONS

9. Mr. Wilcox's creditworthiness has been repeatedly compromised by the acts and omissions of Defendants.

10. On November 2, 2018, Mr. Wilcox applied for a loan for $200,000.

11. On November 2, 2018, when Mr. Wilcox applied for the loan, he was quoted an interest rate of 3.5%.

12. The credit review revealed two collections against Mr. Wilcox for purported Microsoft debt, which had been reported by Caine & Weiner to the CRAs.

13. Caine & Weiner was reporting to the CRAs that Mr. Wilcox owed Caine & Weiner two "Retail" debts that he originally owed to "Microsoft Corp HR" in the amounts of $26,971 and $16,889 (hereinafter the "Caine & Weiner Representations").

14. It is Mr. Wilcox's understanding that the disputed debts originated from his commission-based employment contract with Microsoft.

15. Thus the report that these were "Retail" debts is false.

16. Additionally, as is explained in more detail below, Mr. Wilcox had paid the balances of all prepaid commissions by hitting all sales quotas with Microsoft during his employment as a sales rep, so the balances reported were factually inaccurate as well.

17. Mr. Wilcox then contacted Caine & Weiner who told him the debts related to him being overpaid commissions while employed by Microsoft.

18. Mr. Wilcox was formerly employed by Microsoft, which—to his knowledge—is the origin of the disputed debt.

19. Mr. Wilcox worked as a commissioned sales employee for Microsoft Corporation.

20. Each quarter that Mr. Wilcox was employed by Microsoft, he was prepaid a commission based on the presumption that he would hit seventy-five percent (75%) of his sales quotas.

21. The debts were created at the disbursement of prepaid commissions by means of salary pursuant to the employment contract whereby Mr. Wilcox owed the difference each quarter between what he was paid based on hitting seventy-five percent (75%) of the quota and the percent of the quota that actually sold.

22. At the fourth quarter, Microsoft would calculate Mr. Wilcox's numbers, and he would be paid more of a commission if he sold more than seventy-five percent (75%) of his quota, and if he sold less than seventy-five percent (75%), then Mr. Wilcox would be notified that the debt remained unsatisfied, and what the balance was at that point. As the employment contract continued, the debt would be satisfied out of future earnings.

23. While employed by Microsoft, it was Mr. Wilcox's practice to monitor the status of his performance, and he verified as he worked there that he sold at least seventy-five percent (75%) of his quota for every quarter that he was employed—thus paying these balances down to zero.

24. Therefore, Caine & Weiner has inaccurately reported that Mr. Wilcox's debt balances are $26,971 and $16,889.

25. Mr. Wilcox turned in all company materials at the end of his tenure at Microsoft and left in good standing in 2016.

26. On or about November 20, 2018, Mr. Wilcox was approved for the $200,000 loan with an interest rate of 4.972%, rather than the 3.5% he had been quoted, due to the adverse effect of the Caine & Weiner Representations on his Credit Score.

27. Mr. Wilcox's loan agent informed him that he could dispute the Caine & Weiner Representations, and if they were removed, then he could refinance at a lower rate, but so long as the Caine & Weiner Representations remained, he did not qualify for the quoted rate of 3.5%

28. Mr. Wilcox then closed on the loan at the rate of 4.972% on December 17, 2018.

29. Mr. Wilcox sent credit disputes of the Caine & Weiner Representations to the CRAs on December 20, 2018.

30. On information and belief, Equifax, Trans Union, and Experian then forwarded these disputes to Caine & Weiner.

31. No Defendant adequately investigated the disputes, and Caine & Weiner verified the false information to Equifax, Trans Union, and Experian, who then merely verified the accounts as accurate with no independent verification.

32. Mr. Wilcox's credit was severely negatively impacted due to this reporting.

33. Following Defendants' verification of the Caine & Weiner Representations, Mr. Wilcox purchased a Jeep in cash because he knew that he would not be able to obtain financing for the purchase at prevailing market rates and instead could only obtain high interest subprime loans as a result of the Caine & Weiner Representations.

34. Following Defendants' verification of Caine & Weiner Representations, Mr. Wilcox was informed by his bank that his Home Equity Line of Credit (hereinafter "HELOC") was up for renewal, but that—due to the Caine & Weiner Representations—his interest rate would increase substantially. Due to the Defendants' refusal to correct the inaccurate credit reporting, Mr. Wilcox did not renew his HELOC.

35. Following Defendants' verification of the Caine & Weiner Representations, Mr. Wilcox experienced non-pecuniary damages including daily stress, anxiety, hopelessness, frustration, and anger.

36. During this period, Mr. Wilcox refrained from applying to new jobs because employers in his industry require credit checks.

37. Mr. Wilcox felt trapped by the inaccurate Caine & Weiner Representations in his credit files.

38. Prior to the inaccurate Caine & Weiner Representations appearing in his credit files, Mr. Wilcox always had superior credit.  The news in 2018 that his credit score would remain in the 600s because of inaccurate Caine & Weiner Representations in his credit files caused him a great deal of distress, embarrassment, frustration, and anger that stuck with him until the tradelines were finally deleted.

39. Mr. Wilcox spent countless hours building files to prove that he does not owe the purported debts to Microsoft Corporation as claimed by the Caine & Weiner Representations.

40. Mr. Wilcox again sent disputes to Experian, Equifax and Trans Union on June 4, 2020. Copies of these disputes are attached as Exhibits A, B, and C, respectively, and incorporated herein.

41. On information and belief, Equifax, Trans Union, and Experian then forwarded the June 4, 2020 disputes to Caine & Weiner.

42. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that the accounts from Microsoft Corporation contain inaccurate information, so Mr. Wilcox again asked that they investigate them and mark them as satisfied or delete them.

43. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that the debts originated from his commission-based employment contract with Microsoft.

44. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that while employed by Microsoft, it was Mr. Wilcox's practice to monitor the status of his performance, and he verified as he worked there that he sold at least seventy-five percent (75%) of his quota for every quarter that he was employed—thus paying these balances down to zero.

45. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that the position of Caine & Weiner that Mr. Wilcox's debt balances are $26,971 and $16,889 is incorrect.

46. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that an investigation of the facts behind these purported balances would reveal that Mr. Wilcox satisfied these debt balances in the regular course of employment

at Microsoft by selling at least seventy-five percent (75%) of the sales quotas that he had during each quarter of employment with Microsoft.

47. Mr. Wilcox's June 4, 2020 disputes instruct the Defendants that the debt is not a retail debt but actually originates from an employment contract.

48. No Defendant adequately investigated the disputes, and Caine & Weiner verified the false information to Equifax, Trans Union, and Experian who then merely verified the accounts as accurate with no independent verification.

49. Equifax verified the Caine & Weiner tradelines on June 12, 2020.

50. After he disputed the debts, Mr. Wilcox was able to refinance the loan on June 18, 2020 at which point Mr. Wilcox refinanced at a rate of 3.25%.

51. Between December 17, 2018 and June 18, 2020, Mr. Wilcox paid additional interest on his $200,000 loan that he would not have had to pay but for Defendants' refusal to correct the inaccurate credit reporting that he owed two Microsoft Corporation debts.

52. Experian verified the Caine & Weiner tradelines on June 29, 2020.

53. Trans Union verified the Caine & Weiner tradelines on July 2, 2020.

54. Mr. Wilcox then experienced additional non-pecuniary damages including continued stress and extreme anger as a result of Defendants' failure to correct the inaccurate information in his credit files.

55. Mr. Wilcox had to then pay his attorney $300 to send disputes to the CRAs in order for them to take his disputes seriously and delete the inaccurate tradelines.

56. Counsel for Mr. Wilcox sent disputes to Experian and Equifax on July 7, 2020. Copies of Mr. Wilcox's July 7, 2020 Credit Disputes are attached and incorporated herein as Exhibits D and E, respectively.

57. Counsel for Mr. Wilcox sent a dispute to Trans Union on July 28, 2020. A copy of Mr. Wilcox's July 28, 2020 Credit Dispute is attached and incorporated herein as Exhibit F.

58. The credit disputes sent by counsel contained the same bases for dispute and information as the disputes sent by Mr. Wilcox, yet it was only after Mr. Wilcox had to pay his attorney $300 to send these disputes that the CRAs deleted the disputed tradelines.

## I.  FIRST CLAIM FOR RELIEF AGAINST EXPERIAN, EQUIFAX AND TRANS UNION: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681i

59. Mr. Wilcox re-alleges and incorporates paragraphs 9 through 58 above as if fully set out herein.

60. Experian, Equifax and Trans Union each violated 15 U.S.C. § 1681i on multiple occasions by failing to correct or delete inaccurate information in Mr. Wilcox's credit file after receiving actual notice of inaccuracies.

61. Experian, Equifax and Trans Union received multiple disputes from Mr. Wilcox with information beyond what was contained in Mr. Wilcox's credit files that showed the factual basis for Caine & Weiner's reporting was not accurate.

62. Experian, Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to conduct lawful reinvestigations.

63. Experian, Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to maintain reasonable procedures with which to verify disputed information in Mr. Wilcox's credit file.

64. Experian, Equifax and Trans Union violated 15 U.S.C. § 1681i on multiple occasions by relying upon verification from sources it has reason to know are unreliable, namely Caine & Weiner.

65. As a result of the actions and inaction of Experian, Equifax and Trans Union, Mr. Wilcox suffered damages, such as loss of and limited credit; loss of the ability to purchase and benefit from credit; pecuniary costs of disputing credit information; and the mental and emotional pain, anguish, and humiliation of repeatedly having the credit information verified as accurate despite it being false, thus remaining in his credit report.

66. Experian, Equifax and Trans Union each have a regular practice or policy of ignoring disputed information from a consumer if it contradicts the

information provided by a credit furnisher such as Caine & Weiner after a dispute is sent to the furnisher.

67. It is objectively unreasonable to rely on a furnisher's verification of information without conducting an independent investigation if the furnisher's verification contradicts facts provided in a dispute when the furnisher and consumer's claimed facts contradict each other.

68. Ignoring a factual dispute raised by a consumer because a furnisher verifies information that contradicts the information provided by the consumer in his dispute runs a risk of violating the FCRA that is substantially greater than the risk associated with a merely careless investigation of a dispute of fact.

69. On information and belief, Experian, Equifax and Trans Union relied entirely on Caine & Weiner's response to the disputed information without conducting an investigation of their own.

70. Beyond verifying that Caine & Weiner claimed the reported information was accurate, Equifax made no effort of its own to verify the disputed information.

71. Beyond verifying that Caine & Weiner claimed the reported information was accurate, Trans Union made no effort of its own to verify the disputed information.

72. Beyond verifying that Caine & Weiner claimed the reported information was accurate, Experian made no effort of its own to verify the disputed information.

73. Thus, Experian, Equifax and Trans Union's reckless disregard of the information provided by Mr. Wilcox, which showed that he had paid his balance with Microsoft, was willful, rendering them each liable for actual or statutory damages, and punitive damages in amounts to be determined pursuant to 15 U.S.C. § 1681n.

74. In the alternative, Experian, Equifax and Trans Union's conduct was negligent, entitling Mr. Wilcox to recover actual damages under 15 U.S.C. § 1681o.

75. Mr. Wilcox is entitled to recover costs and attorney's fees from Experian, Equifax and Trans Union in amounts to be determined pursuant to 15 U.S.C. § 1681n and/or 1681o.

## II. FIRST CLAIM FOR RELIEF AGAINST CAINE & WEINER: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b)

76. Mr. Wilcox re-alleges and incorporates paragraphs 9 through 58 above as if fully set out herein.

77. At no time did Caine & Weiner have a reasonable or good faith belief in the veracity of any of the Caine & Weiner Representations.

78. On information and belief, Caine & Weiner purchased the purported debts from Microsoft and did not know any particular facts regarding the origination of the debts.  Rather, on information and belief, Caine & Weber only received debt balance and default date information from Microsoft Corporation.

79. Mr. Wilcox has repeatedly contested the Caine & Weiner Representations to Caine & Weiner.

80. Mr. Wilcox disputed the Caine & Weiner Representations to Experian, Equifax and Trans Union.

81. On information and belief, Experian, Equifax and Trans Union then forwarded on these disputes to Caine & Weiner and otherwise notified Caine & Weiner of Mr. Wilcox's disputes.

82. On all occasions that Mr. Wilcox disputed the Caine & Weiner Representations, Caine & Weiner verified, without justification, that the Caine & Weiner Representations were accurate.

83. Caine & Weiner re-verified the Caine & Weiner Representations to Experian, Equifax and Trans Union repeatedly.

84. Caine & Weiner violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by continuing to report the Caine & Weiner Representations to Experian, Equifax and Trans Union without also including a notation that this debt was disputed.

85. Caine & Weiner violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Mr. Wilcox's disputes of the Caine & Weiner Representations.

86. Caine & Weiner violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to review all relevant information regarding Mr. Wilcox's disputes of the Caine & Weiner Representations and by failing to accurately respond to Experian, Equifax or Trans Union.

87. Caine & Weiner violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to permanently and lawfully correct their own internal records or obtain the files from Microsoft Corporation regarding the purported debts underlying the Caine & Weiner Representations, all of which should have helped to prevent the re-reporting of the Caine & Weiner Representations to the consumer reporting agencies.

88. As a result of this conduct, action and inaction of Caine & Weiner, Mr. Wilcox suffered damage, such as loss of and limited credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of having the Caine & Weiner Representations repeatedly verified in his credit file, and worry that his finances will be negatively impacted.

89. Caine & Weiner willfully relied on incomplete information it obtained from Microsoft and refused to obtain complete information regarding the Caine & Weiner Representations, yet continued to make representations on which it knew it did not have complete information.

90. Caine & Weiner's conduct, action and inaction was willful, rendering it liable for actual, statutory, and punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Caine & Weiner was negligent entitling Mr. Wilcox to recover actual damages under 15 U.S.C. 1681o.

91. Mr. Wilcox is entitled to recover costs and attorney's fees from Caine & Weiner in an amount to be determined pursuant to 15 U.S.C. § 1681n and § 1681o.

### *PRAYER FOR RELIEF*

THEREFORE, Mr. Wilcox prays that this Court grant the following relief against Defendants:

   a) actual damages;
   b) statutory damages;
   c) punitive damages;
   d) attorney's fees and costs; and
   e) such other relief as this court deems appropriate.

JURY TRIAL DEMANDED

Dated: October 8th, 2020.

    Respectfully submitted,

    **SMITH, WELCH, WEBB & WHITE, LLC**
    By:  **s/Orion G. Webb**
    Orion G. Webb, Esq.
    Georgia Bar No. 479611
    280 Country Club Drive, Suite 300
    Stockbridge, GA  30281
    T. (770) 389-4864
    F. (770) 389-5193
    owebb@smithwelchlaw.com